```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA

MARTENUS PRIMEAUX,              )
                                )
           Plaintiff,           )
                                )
v.                              )    Case No. CIV-17-061-JHP-KEW
                                )
NANCY A. BERRYHILL, Acting      )
Commissioner of Social          )
Security Administration,        )
                                )
           Defendant.           )
```

## REPORT AND RECOMMENDATION

Plaintiff Martenus Primeaux ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's applications for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 52 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an road striper and tank truck driver. Claimant alleges an inability to work beginning December 19, 2011 due to limitations caused by bladder control problems, headaches, pain in the neck, shoulder, and lower back, shoulder problems, and knee problems.

### Procedural History

On February 4, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 7, 2015, a hearing was held before Administrative Law Judge ("ALJ") John Belcher in Tulsa, Oklahoma. By decision dated September 18, 2015, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On December 30, 2016, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) reaching an RFC which was not supported by the evidence; and (2) making step five findings based upon hypothetical questioning to the vocational expert which did not include all of Claimant's limitations.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spine, osteoarthritis of the right shoulder (with the left shoulder only becoming severe in 2014, after the date of disability), diabetes mellitus, and obesity. (Tr. 14).[2] He concluded Claimant retained the RFC to perform sedentary work in that he could lift/carry, push/pull up to ten pounds occasionally and ten pounds frequently; stand/walk for two hours in an eight hour workday; and sit for six to eight hours in an eight hour workday. Claimant was found to be able to occasionally climb ramps and stairs; occasionally balance, bend, or stoop, crouch, kneel, and crawl but never climb stairs, ramps, ladders, ropes, or scaffolding. Claimant was able to frequently use the right arm for reaching overhead and in all directions. (Tr. 17). Based upon this RFC and after consultation with a vocational expert, the ALJ found at step five that Claimant could perform the representative jobs of waxer (glass products), dowel inspector, and polisher, all of which the ALJ found existed in sufficient numbers in the regional and national economies. (Tr. 21). The ALJ then determined that as of May 19, 2013, Claimant's age category changed

---

[2] In the future, the Court would require that Claimant's counsel reference the Administrative Record utilizing the Bates numbering provided by Defendant rather than the Electronic Case Filing numbering on the docket for uniformity and ease of reference.

and, therefore, no jobs existed in significant numbers that Claimant could perform after that date. As a result, the ALJ determined Claimant became disabled on May 19, 2013 but was not disabled prior to that date. (Tr. 22).

Claimant contends the ALJ's RFC findings were flawed. First, the ALJ stated Claimant could occasionally climb stairs and ramps then later in the RFC statement set forth that Claimant could never climb stairs and ramps. (Tr. 17). While this discrepancy creates unnecessary confusion, the mistaken reference is harmless because the questioning of the vocational expert did not contain this inconsistency, proposing that the individual could occasionally climb stairs and ramps but could not climb ladders, ropes, and scaffolding. (Tr. 50). More importantly, none of the jobs identified by the vocational expert requires climbing. *Dictionary of Occupational Titles*, #779.687-038 (waxer); #669.687-014 (dowel inspector); #713.684-038 (polisher).

Claimant also asserts the ALJ erroneously found he could frequently reach with his right shoulder. Claimant underwent arthroplasty total replacement surgery on the shoulder in May of 2012 due to "primary localized osteoarthritis." (Tr. 299, 303). In August of 2012, Claimant was found to have "active and passive rom much improved comparing to prior surgery still with moderate pain with extreme abd/internal and external rotation" of the right

shoulder. (Tr. 437). X-rays revealed right shoulder prosthesis in place without acute abnormality. No evidence of acute fracture or dislocation was noted with the presence of acromioclavicular arthrosis. Surrounding tissues were unremarkable. (Tr. 357). Claimant demonstrated improved range of motion and strength during physical therapy sessions, although he still experienced pain. (Tr. 415-17, 421). In September of 2012, Dr. Traci Carney found limitations in Claimant's range of motion in his right shoulder. In shoulder abduction, Claimant rated in supination 60/150, right forward elevation 60/150, right adduction 30/30, right internal rotation 40/80, and right external rotation 45/90. (Tr. 324).

In November of 2012, Dr. Steven O. Smith found Claimant's shoulder "moves good and his pain overall has improved. Still complaining of some lateral sided pain. He may have some residual cuff impingement type symptoms. We have injected him subacromial today. He will just continue with home therapy at this point and I will see him back in a couple of months if still symptomatic." (Tr. 403).

In February of 2013, Dr. Smith found Claimant was still feeling a "catch" in his right shoulder and he had to internally rotate to get his shoulder seated and then externally rotate it again. Claimant also reported that the grinding and clicking he experienced before his surgery had improved. His pain had not

changed.  Claimant also stated that he did not have the strength close to his body that he had prior to the surgery.  Dr. Smith proposed that he give Claimant another three months of therapy.  If his shoulder condition did not improve significantly at that point, Dr. Smith would consider exploratory surgery to see if he had some labral catch or instability of the prosthesis in his shoulder. (Tr. 380).

X-rays from February of 2013 indicated that the right shoulder was stable without hardware fracture or loosening. Acromioclavicular minimal arthrosis was noted.  (Tr. 355).

Claimant's medical records were reviewed by Dr. Johnny Craig and Dr. Donald Baldwin.  Both physicians noted the medical records recited herein.  (Tr. 62, 85).  They also recognized the limitations in Claimant's ability to reach with the right shoulder (Id.) but concluded that Claimant could perform light work.  (Tr. 61-62, 64, 84-85, 87).  The ALJ reduced this recommendation to sedentary work with frequent rather than constant reaching requirements for his right shoulder.  (Tr. 17).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001).  A residual functional capacity assessment "must include a narrative discussion describing

8

how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant urges essentially that someone who has had the surgery and problems with their right shoulder that he has experienced simply could not perform the reaching requirements stated in the RFC. The medical evidence does not support this conclusion. Claimant's range of motion during the relevant time period had improved and his pain had, at the very least, remained the same after improvement post-surgery. As a result, the ALJ made a reasonable interpretation of the medical evidence in reaching his conclusions and his RFC in regard to reaching finds support by substantial evidence.

Claimant next contends the ALJ mischaracterized his degenerative disc disease as mild and understated his limitations resulting from the condition. Claimant's MRI indicated multilevel degenerative disc disease with varying degrees of spinal and foraminal stenosis. At T12-L1, the testing indicated a disc protrusion resulting in severe spinal stenosis and compression upon the conus medullaris of the distal cord. The radiologist recommended a neurosurgical consultation as a result of the condition. (Tr. 486).

On August 6, 2013, Claimant was evaluated by consultative examiner, Dr. Wojciech L. Dulowski. With regard to Claimant's spinal condition, Dr. Dulowski found he had good coordination, equal strength in the upper and lower extremities, and no tremor. He noted Claimant walked with a slight limp to the left side and that he had some weakness on walking on tiptoes and heels. (Tr. 464). He also found Claimant to be "very tender over the cervical and lumbar spines." (Tr. 465). Straight leg raising was negative. (Tr. 326, 469). In March of 2015, Dr. Sudha Fravinkumar found Claimant to have normal gait/strength. (Tr. 482). The ALJ considered Claimant's weight and "mild degenerative disc disease" to conclude that he should be limited to sedentary work – in contrast to the opinions of the consultative physicians who recommended light work. (Tr. 19).

While the ALJ's minimization of Claimant's degenerative disc disease is somewhat troubling, the evidence is simply lacking that Claimant would be unable to perform the necessary requirements for sedentary work. The ALJ discounted Claimant's credibility on the distance he could walk in light of the medical evidence of his normal or near normal gait and strength. (Tr. 19). While the ALJ's stated evaluation of Claimant's credibility was sparse, it was sufficient to meet his obligation under the regulations. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

This Court does not doubt that Claimant suffers from painful conditions. The question is whether the ALJ's conclusions are reasonable in light of the medical evidence and finds substantial support in the record. In this instance, the ALJ's RFC and associated credibility findings are supported.

Claimant also contends the ALJ failed to adequately consider his mental impairments. This conclusion is based upon a Mental Diagnostic Evaluation performed by Dr. Robert Spray on October 5, 2012. Dr. Spray noted Claimant had never sought mental health

treatment and takes no medication for a mental condition. (Tr. 314). He found Claimant cooperative, with euthymic mood, appropriate and variable affect, normal speech, logical goal-directed thoughts with proper orientation. (Tr. 315). Cognitive functioning, attention and concentration, and persistence were adequate. (Tr. 316). Despite these findings, Dr. Spray diagnosed Claimant with adjustment disorder with depressed and anxious mood. Id. This diagnosis simply has no support in Dr. Spray's own report or in the reviewing evaluation performed by Dr. Charles Bridges. (Tr. 83). The record on mental evaluations is limited since Claimant never alleged such an impairment in his applications or paperwork. This Court finds the ALJ did not err in failing to include a mental limitation in his RFC.

### Step Five Evaluation

Claimant contends the ALJ's hypothetical questioning of the vocational expert was flawed since the questions posed did not include all of Claimant's limitations. Since this Court has concluded that the ALJ's RFC was appropriate and the hypothetical questioning includes all limitations within the RFC, no error is found at step five.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore,

the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED.**

The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE